IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

NORTH CAROLINA MUTUAL LIFE          )
INSURANCE COMPANY,                  )
                                    )
              Plaintiff,            )
                                    )
       v.                           )          1:03CV00911
                                    )
McKINLEY FINANCIAL SERVICE, INC.,   )
and JAMES McKINLEY,                 )
                                    )
              Defendants,           )
                                    )
              and                   )
                                    )
McKINLEY FINANCIAL SERVICE, INC.,   )
                                    )
              Third-Party Plaintiff,[1]  )
                                    )
       v.                           )
                                    )
COLLEGIATE RISK MANAGEMENT, INC.,   )
a Florida corporation; and VONDA WHITE,  )
                                    )
              Third-Party Defendants.    )


MEMORANDUM OPINION

BEATY, District Judge.

I.     INTRODUCTION

       This matter arises out of a contract to sell insurance products between Plaintiff North

Carolina Mutual Life Insurance Company ("NCM") and Defendant/Third-Party Plaintiff McKinley

Financial Service, Inc. ("McKinley" or "Third-Party Plaintiff").   In performing that contract,

_____

       [1]The Court notes that although some documents in this case have been filed with a
designation indicating that James McKinley, also referred to as "Jim McKinley", is both a Defendant
and a Third-Party Plaintiff, in fact, only McKinley Financial Service, Inc. filed the Third-Party
Complaint and James McKinley never joined that Third-Party Complaint.

McKinley, in turn, hired Third-Party Defendants Collegiate Risk Management, Inc. ("Collegiate") and its president, Vonda White ("Ms. White")(collectively "Third-Party Defendants") to assist in the sale of the insurance products. Ms. White has filed a Motion to Dismiss [Document #32] under Federal Rule of Civil Procedure 12(b)(2) as to this Court's lack of personal jurisdiction over her. Alternatively, Third-Party Defendants Collegiate and Ms. White have brought a joint Motion to Dismiss [Document #30] under Federal Rule of Civil Procedure 12(b)(6) because of various alleged deficiencies in McKinley's Third-Party Complaint [Document #19]. For the reasons that follow, Ms. White's Motion to Dismiss is denied in part and granted in part, and Third-Party Defendants' Motion to Dismiss is denied in part and granted in part.

II.     FACTUAL BACKGROUND

As is proper when considering a Motion to Dismiss, this Court will consider the facts in a light most favorable to the non-moving party, which in this case is the Third-Party Plaintiff. McKinley, an insurance broker and resident of Florida, entered into a Managing General Agent Agreement with NCM, a resident of North Carolina, in December 1999. Under this agreement, McKinley was to sell directly and through subagents accident and health insurance to schools and universities to cover students and sporting activities as part of an insurance program (hereinafter referred to as the "Program"). McKinley was responsible for collecting premiums from insureds, and after the deduction of the appropriate commissions and expenses, remitting the premium balance to NCM.

In early 2001, pursuant to an oral agreement, McKinley hired Collegiate and Ms. White (as president of Collegiate) to assist in sales under the Program. Under this oral agreement, McKinley would pay commissions to Third-Party Defendants on all Program products sold by Third-Party

Defendants. In June 2001, McKinley and Collegiate entered into a written Letter Agreement (Third-Party Complaint, Ex. B.)(hereinafter, the "First Letter Agreement") that confirmed an oral conversation in which the commission rate quoted for an insurance contract with Loyola University - Chicago would be 5 percent. This letter was signed by Ms. White and Jim McKinley, president of Third-Party Plaintiff, McKinley. In performance of this contract, Collegiate was to accept the premiums from Loyola University and remit the balance, less its commission, to McKinley.

Subsequently, as the Program grew, McKinley, Collegiate, and Ms. White entered into a more detailed Letter of Agreement in August 2003. This second Letter of Agreement (Third-Party Complaint, Ex. C.)(hereinafter, the "Second Letter Agreement") states that Collegiate would be assigned to represent McKinley and NCM in the solicitation of college, student accident and sickness insurance, and college athletic accident insurance in eleven states, with potentially greater business in the future. Furthermore, this Second Letter Agreement provides that the parties agree not to quote or bid on each other's present accounts. It also sets up a commission schedule for McKinley to pay Collegiate, and states that the agreement is for two years from the date signed. Additionally, the Second Letter Agreement states that should the contract be terminated, the parties agree to a two-year non-compete agreement. Both parties agree to forward any requests for proposals or bids to the other party if it is in their assigned area. The document is signed by James McKinley of McKinley Financial Services, Inc., and Ms. White for Collegiate Risk Management, Inc.

Subsequent to the signing of this Second Letter Agreement, the parties transacted their business with few changes. However, in 2002, NCM restructured its agreement with McKinley as a result of alleged excessive losses under the Program, by replacing all base and contingent commissions with a revised compensation formula. In August 2003, NCM terminated the

3

Managing General Agent Agreement with McKinley. However, McKinley alleges that prior to NCM breaking off its business with McKinley, Collegiate and Ms. White told McKinley (which in turn told NCM) that various insurance cases could not be moved out of the Program. In response, and unbeknownst to McKinley, Collegiate and Ms. White then directly negotiated with NCM to remove various insurance cases from the Program, as NCM had previously sought McKinley's assistance in doing, thereby depriving McKinley of commissions on those cases. Furthermore, McKinley alleges that because of Collegiate and Ms. White's actions, NCM subsequently replaced McKinley with Collegiate as its Managing General Agent.

Based upon these facts, Ms. White has brought a Motion to Dismiss as to personal jurisdiction, and Third-Party Defendants have brought a Motion to Dismiss all of McKinley's claims for various reasons. McKinley's claims are as follows: Injunctive Relief (Count V); Breach of Contract (Counts VI, VII, and VIII); Tortious Interference with Advantageous Contractual Relationship (Count IX); Negligent Misrepresentation (Count X); Indemnification (Count XI); and Breach of Fiduciary Duty (Count XII).[2] The Court will now deal with each of these motions in turn.

III.     MS. WHITE'S MOTION TO DISMISS BASED UPON PERSONAL JURISDICTION

In order for a plaintiff to establish jurisdiction over a non-resident defendant, that plaintiff must make a prima facie showing that this Court's exercise of jurisdiction over the defendant for each of its claims is authorized by the state's long-arm statute and that it comports with the due process limits of the Constitution. See Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). North Carolina's long-arm statute has been

---

[2]McKinley's claims I - IV are against NCM and as such are not a part of Third-Party Defendants' Motion to Dismiss.

4

interpreted to extend to the full extent permitted by the Constitution, thus the inquiry collapses into a one-step due process analysis. See id.; DP Envtl. Servs. v. Bertlesen, 834 F. Supp. 162, 164 (M.D.N.C. 1993)("Since North Carolina's legislature intended to make available to the North Carolina courts the full jurisdictional powers permissible under federal due process, the normal two-step inquiry merges into one."). As such, in order to establish jurisdiction, a plaintiff must show: "(1) the extent to which the defendant 'purposefully availed' [herself] of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002). Due process concerns will be satisfied when a non-resident "defendant purposefully avails [herself] of the privilege of conducting activities within the forum State." Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240 (1958).

The initial burden of alleging and proving jurisdictional facts rests upon the plaintiff. See Bruggeman v. Meditrust Acquisition Co., 138 N.C. App. 612, 615, 532 S.E.2d 215, 217 (2000). Where "unverified allegations in the complaint meet plaintiff's 'initial burden of proving the existence of jurisdiction . . . and defendants do not contradict plaintiff's allegations in their sworn affidavit,' such allegations are accepted as true and deemed controlling." Id. at 615, 532 S.E.2d at 218 (citing to Inspirational Network, Inc. v. Combs, 131 N.C. App. 231, 235, 506 S.E.2d 754, 758 (1998)). However, where defendant submits some form of evidence to counter plaintiff's allegations, those allegations can no longer be taken as true. Id.

Ms. White brings her Motion to Dismiss based upon the fact that an assertion of jurisdiction over her, a Florida resident, would not comport with traditional notions of fair play and substantial

5

justice.  More specifically, Ms. White argues that she has not *personally* availed herself of the privilege of conducting activities in the state of North Carolina, and so any contacts that she had with the parties to this litigation and to the state of North Carolina only came about through her capacity as a director, officer, and employee of Collegiate.  Notably, Ms. White does not argue that her contacts with North Carolina as president of Collegiate would not support personal jurisdiction over her. (Mem. Supp. Mot. Dismiss Third-Party Compl. For Lack Of Personal Jurisdiction, at 3 ("Any contacts that Ms. White had with the parties to this litigation, and with the state of North Carolina, were through her capacity as a director, officer and employee of [Collegiate].")) Ms. White only claims by affidavit that she has no "personal business relationship with NCM," that "NCM has never paid [her] monies personally," and that "[a]ll contacts I have had with NCM were made exclusively in my position as an officer of [Collegiate] within the scope of my employment."

In response to Ms. White's arguments, McKinley states that while there is a general rule that personal jurisdiction does not extend to an officer of a corporation who has no personal involvement in a corporate tort, that rule does not apply where an officer has a direct personal involvement in a tort committed in the forum state.  See Columbia Briargate Co. v. First Nat'l Bank, 713 F.2d 1052, 1064 (4th Cir. 1983)("[W]hen a non-resident corporate agent is sued for a tort committed by him in his corporate capacity in the forum state . . . he is properly subject to the jurisdiction of the forum court, provided the long-arm statute of the forum state is co-extensive with the full reach of due process.") In such an instance, that is, where a corporate officer actually commits a tort in the forum state, "it is unimportant . . . whether he was acting at the time in his corporate or personal role."  Id. at 1065.  Therefore, in cases where the officer commits the tort in the forum state, that officer is subject to personal jurisdiction in the state where the tort was

6

committed. In the instant matter, McKinley alleges, and Ms. White does not deny, that she personally solicited, and then negotiated and entered into contract with NCM in North Carolina. It is this very conduct that McKinley uses to state a claim for tortious interference with advantageous contractual relations. As such, and because McKinley is only required to show a prima facie case of personal jurisdiction to defeat a motion to dismiss, the Court finds that it has jurisdiction over Ms. White because of her alleged actions in the state to tortiously interfere with McKinley's contract with NCM. See D'Addario v. Geller, 264 F. Supp. 2d 367, 381 (E.D. Va. 2003)(Finding personal jurisdiction over corporate directors whose personal acts and decisions causally related to defendant's alleged injury in the state). The Court notes, however, that McKinley must still prove these contacts by Ms. White by a preponderance of the evidence, as the contacts relied upon by the Court as to the assertion of jurisdiction "may be dispositive of questions of liability as well." Nichols v. G.D. Searle & Co., 783 F. Supp. 233, 243 (D. Md. 1992); see also Hare v. Family Publications Service, Inc., 334 F. Supp. 953, 956-59 (D. Md. 1971)(stating that where the jurisdictional factual allegations are contested, plaintiff need only make out a prima facie case of jurisdiction prior to trial, but at trial must still prove those jurisdictional facts as well as the ultimate facts).

McKinley makes no argument that Ms. White should be subject to this Court's jurisdiction as to any other claim than the tortious interference claim, nor does McKinley argue that Ms. White has subjected herself to general jurisdiction in North Carolina. See Helicopteros Nacionales de Colombia, S. A. v. Hall, 466 U.S. 408, 415, 104 S. Ct. 1868, 1872 (1984)(stating that when a cause of action does not arise out of or relate to the foreign corporation's activities in the forum state, due process is not offended where there are sufficient contacts between the corporation and the forum

state).  Instead, McKinley only argues that a tortious act by Ms. White in North Carolina subjected her to suit here.  As such, McKinley is arguing that this Court has specific personal jurisdiction over Ms. White as to the tortious interference claim.  Id. at 414, 104 S. Ct. at 1872 ("It has been said that when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the State is exercising 'specific jurisdiction' over the defendant.")(citation omitted).  Because the Court does not have general jurisdiction over Ms. White, it must further consider whether it has specific personal jurisdiction over the rest of McKinley's claims against Ms. White.  See Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 24 (2d Cir. 2004)("A plaintiff must establish the court's jurisdiction with respect to _each_ claim asserted.")(emphasis in original); 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1069.7 (3d ed. 2002)("[I]t is important to remember that a plaintiff also must secure personal jurisdiction over a defendant with respect to each claim she asserts.")

Many courts have adopted the doctrine of "pendent personal jurisdiction."  See Action Embroidery Corp. v. Atl. Embroidery, Inc., 368 F.3d 1174, 1180 (9th Cir. 2004).  Under this doctrine, a court will assert "pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction, so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction."  Id. (collecting cases)(finding pendent personal jurisdiction over state law antitrust claims without an independent basis for personal jurisdiction where court has personal jurisdiction over federal antitrust claim).  Thus, "a district court has discretion to exercise personal jurisdiction over a claim that it ordinarily lacks personal jurisdiction over only when that claim arises out of the same common nucleus of operative fact as does a claim that is within the in personam jurisdiction

8

of the court." Wright & Miller, supra, § 1069.7.

In this case, as previously stated, McKinley has made no argument as to Ms. White's personal jurisdiction with relation to any other claim than to tortious interference with contract. However, this Court may still consider the factual allegations of the other claims to determine whether the other claims arise within the same common nucleus of operative fact. McKinley's claim for an injunction arises out of an alleged breach of fiduciary duty by Collegiate and Ms. White and asks that Third-Party Defendants be barred from assisting NCM to move insurance cases out of the Program. Given that the tortious interference with contract claim concerns McKinley's contract with NCM, an injunction asking that Ms. White be barred from further assisting NCM to allegedly breach its contract with McKinley arises within the same common nucleus of operative fact. Similarly, McKinley's third claim for breach of contract arises out of Third-Party Defendant's alleged breach of fiduciary duty in moving insurance cases out of the Program on NCM's orders. The Court finds that this claim as well arises within the same common nucleus of operative fact.

However, as will be discussed in more detail below, McKinley's two other breach of contract claims concern, first, whether Third-Party Defendants properly collected premiums from insured and remitted the balance, minus their commission, to McKinley, and second, whether Third-Party Defendants properly retained the correct amount of commission. The Court finds that neither of these breach of contract claims arise out of Ms. White's contacts with North Carolina, that being the alleged tortious interference with McKinley's contract with NCM, because both of these alleged breaches solely concern a contract made and performed in Florida. As such, the Court will, in its discretion, refuse to retain these claims against Ms. White based upon pendent personal jurisdiction. See Robinson v. Penn Cent. Co., 484 F.2d 553, 556 (3d Cir. 1973)("[T]he court remains free

throughout the proceedings to dismiss [a pendent state] claim if that seems the fairer course."). The Court need not at this point address the remainder of McKinley's claims against Ms. White, based on their disposition below.[3] Therefore, in summary, the Court finds that Ms. White's Motion to Dismiss McKinley's Third-Party Complaint based upon a lack of personal jurisdiction should be denied as to McKinley's claims for an injunction, its third breach of contract claim concerning a breach of fiduciary duty, and the tortious interference with contract claim. Ms. White's Motion, however, is granted with respect to McKinley's two other breach of contract claims concerning collection of premiums and amounts of commission that arise out of conduct occurring in Florida and are not part of the common nucleus of fact as McKinley's other claims relating to the allegation of tortious interference with contract.

IV.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendants Collegiate and Ms. White have also filed a Motion to Dismiss based upon Federal Rule of Civil Procedure 12(b)(6). With respect to a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, dismissals are allowed "only in very limited circumstances." Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989). Generally, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514, 122 S. Ct. 992, 998 (2002) (internal quotations omitted); accord Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). In making this determination, a court must view the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded

_____

[3]That is, for the reasons stated herein, the Court is dismissing the remaining counts against both Third-Party Defendants, which are negligent misrepresentation, common law indemnification, and breach of fiduciary duty, based upon the economic loss doctrine and failure to state a claim.

factual allegations. <u>Randall v. United States</u>, 30 F.3d 518, 522 (4th Cir. 1994). Thus, the purpose of a motion to dismiss is to test the legal sufficiency of the complaint and not the facts that support it. <u>Neitzke v. Williams</u>, 490 U.S. 319, 326–27, 109 S. Ct. 1827, 1832 (1989). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>Revene v. Charles County Comm'rs</u>, 882 F.2d 870, 872 (4th Cir. 1989)(internal quotations omitted).

As a preliminary matter, however, the Court notes that there is an unsettled choice of law question before the Court. This being a case brought in diversity, the Court must apply the law of North Carolina, including its choice-of-law rules. <u>See</u> <u>Klaxon Co. v. Stentor Electric Mfg. Co.</u>, 313 U.S. 487, 496, 61 S. Ct. 1020, 1021 (1941)(stating that federal courts sitting in diversity must apply conflict of law rules from the state where federal court is based). Under North Carolina law, questions of contract construction and interpretation are governed by the law of the state where the contract was made. <u>See</u> <u>Tanglewood Land Co. v. Byrd</u>, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980). To the extent that the parties agree that the contracts between McKinley and Third-Party Defendants were made in Florida, the contract claims will be governed by Florida law.

On the other hand, under North Carolina law, courts considering tort claims have traditionally applied the law of the state where the injuries were sustained. <u>See</u> <u>New England Leather Co. v. Feuer Leather Corp.</u>, 942 F.2d 253, 255 (4th Cir. 1991). An injury occurs "in the state where the last event takes place which is necessary to render the actor liable for an alleged tort." <u>Munchak Corp. v. Riko Enterprises, Inc.</u>, 368 F. Supp. 1366, 1370 (M.D.N.C. 1973). McKinley mistakenly argues that the last event in this case to render Third-Party Defendants liable for tortious interference with contract was the formation of a contract between NCM and

11

Collegiate. However, under North Carolina law, the last event necessary to render Third-Party Defendants liable was McKinley's injury. See Speedway Promoters, Inc. v. Hooter's of Am., Inc., 123 F. Supp. 2d 956, 962 (W.D.N.C. 2000)(stating that the last event in a tortious interference claim is the injury that makes defendant liable); Rhone-Poulenc Agro S.A. v. Monsanto Co., 73 F. Supp. 2d 554, 555 (M.D.N.C. 1999)(stating that the last event in a fraud claim is the injury to plaintiff, which occurs in the state in which the plaintiff suffered an economic impact). Therefore, the Court finds that the place where the last event occurred as to tortious interference with contract was Florida, since that is the state where McKinley is located and damaged within. As such, the Court has determined that Florida law will govern McKinley's tortious interference claim.[4] Similarly, McKinley's other tort claims, negligent misrepresentation, indemnification, and breach of fiduciary duty, all arise based upon McKinley's allegation that Third-Party Defendants failed to provide accurate underwriting information to it. McKinley also claims that Third-Party Defendants failed to advise McKinley that insurance cases could not be moved out of the Program, as NCM had requested. As such, those tort claims will also be governed by Florida law, the state where the final events occurred that McKinley contends form the basis for its claims for negligent

---

[4]Third-Party Defendants, Collegiate and Ms. White, urge this Court to apply a different choice of law analysis. They argue that where the place of injury is open to debate, North Carolina choice of law rules require a court to apply the law of the state with the most significant relationship to the transaction. Id. However, that specific rule applies to unfair and deceptive trade practice claims. See New England Leather Co., 942 F.2d at 255; Andrew Jackson Sales v. Bi-Lo Stores, Inc., 68 N.C. App. 222, 225, 314 S.E.2d 797, 799 (1984). In this case, Third-Party Plaintiff has not brought an unfair and deceptive trade practices claim. However, were the Court to apply the "most significant relationship" test to McKinley's tortious interference claim, it would rule the same way and apply Florida law even though the conduct causing the injury likely occurred in North Carolina, because the damage to McKinley occurred in Florida, the parties are located in Florida, and the relationship between the parties is centered in Florida. See Restatement (Second) of Conflict of Laws § 145 (1971).

misrepresentation, indemnification, and breach of fiduciary duty, in that McKinley was damaged in Florida, the state where it is located.

The Court will now discuss in turn each of Third-Party Defendants' arguments in relation to their Motion to Dismiss, as applied to each of McKinley's claims.

A.      Injunctive Relief To Prevent Third-Party Defendants From Assisting NCM To Move Insurance Cases - Count V

McKinley seeks injunctive relief based upon an alleged breach of contract by Third-Party Defendants. More specifically, McKinley seeks to enforce a two-year non-compete provision contained in the Second Letter Agreement, which states that, "Both parties also agree to enter into a two-year non-compete agreement if and when this agreement is terminated for any reason." Additionally, McKinley states that its claim for injunctive relief is based upon Third-Party Defendants' owing a fiduciary duty to McKinley to act in good faith and with loyalty as subagents to McKinley. As such, McKinley seeks an injunction that would permanently restrain Third-Party Defendants from assisting NCM to terminate the Managing General Agent Agreement or to move any existing insurance coverages that are sold through McKinley representing NCM.

In their Motion to Dismiss, Third-Party Defendants argue that McKinley fails to state a cause of action for injunctive relief because: (1) McKinley fails to allege that the Second Letter Agreement was terminated, thereby initiating the non-compete provision; (2) McKinley fails to allege that the parties entered into the contemplated two-year non-compete agreement; (3) an agreement to agree does not constitute an enforceable contract under North Carolina law;[5] and (4) it is unclear from the language of the contract who the parties' intended with the language "both parties". In

---

[5]The Court notes again that Florida law would apply to this claim.

response to this argument, McKinley states that the claim for an injunction is based upon more than the language in the Second Letter Agreement. McKinley therefore notes that the Third-Party Defendants' arguments do not challenge the sufficiency of the remaining allegations which would support the requested injunctive relief.

Upon review of McKinley's pleadings, the Court agrees that McKinley's claim for an injunction is based upon more than the non-compete provision of the Second Letter Agreement, that is, that McKinley has alleged that, as agents of McKinley, Third-Party Defendants owed a fiduciary duty to McKinley, and as such, any failure on McKinley's part to allege that the Second Letter Agreement was terminated, thereby initiating the non-compete agreement, is harmless. Under Rule 8(a) of the Federal Rules of Civil Procedure, a plaintiff need only state "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements." Fed. R. Civ. P. 8(e)(2). More specifically, the Court finds that McKinley's claim for an injunction is also based upon an alleged fiduciary duty on the part of Third-Party Defendants to McKinley. (Third-Party Compl., ¶¶ 92, 94-96.) As such, Third-Party Defendants' Motion to Dismiss Count V of the Third-Party Complaint is denied.

B.     Third-Party Defendants' Motion to Dismiss McKinley's Breach of Contract Claim Relating To Collection And Remittance Of Premiums - Count VI

McKinley states in its Third-Party Complaint that Third-Party Defendants breached the Second Letter Agreement because under that agreement, Third-Party Defendants are required to receive premiums on insurance cases sold under the Program, retain the agreed upon commission, and then remit the balance of the premium to McKinley. However, instead of following this

14

procedure, McKinley alleges that Third-Party Defendants refused to remit the premiums collected on the Program to McKinley, as they were required to do. Third-Party Defendants argue in their Motion to Dismiss that this breach of contract claim fails because the Second Letter Agreement does not contain the obligations described by McKinley.

In response, McKinley argues that under Florida law, evidence of a prior or contemporaneous oral agreement is admissible in construing the terms of a contract, so long as the parties do not intend that the writing is the final and complete agreement and the extrinsic evidence does not contradict the unambiguous written language of the contract. See Ungerleider v. Gordon, 214 F.3d 1279, 1282 (11th Cir. 2000). As such, McKinley argues that the Second Letter Agreement was not intended to be the final or complete written expression of its agreement with Third-Party Defendants, and the Second Letter Agreement refers to the fact that Third-Party Defendants agree not to violate any "procedures outlined by [McKinley] and/or NCM."

In response to McKinley's arguments, Third-Party Defendants state that McKinley failed to allege any additional "oral terms" of their contract other than the written terms contained within the Second Letter Agreement, and to the extent that oral terms are part of the agreement, McKinley would be required to allege such terms with specificity so that Collegiate could adequately respond and challenge the validity of such a contract. Third-Party Defendants, however, do not cite any case law for such a pleading requirement.

The Court notes that according to McKinley's Third-Party Complaint, which addresses a request for injunctive relief, McKinley "repeats and realleges each and every allegation contained in paragraphs 1 through 54 above, as if set forth herein in full." (Third-Party Compl., ¶ 106.) Additionally, the allegation contained in paragraph 20 of the Third-Party Complaint states that the

15

sub-agency relationship between McKinley and Collegiate was initially established pursuant to an oral agreement. The allegation contained in paragraph 22 of the Third-Party Complaint states that on June 8, 2001, McKinley and Collegiate entered into the first Letter Agreement "confirming their understanding" as to the commission to be paid to Collegiate. (Third-Party Compl., ¶ 22.) The allegation contained in paragraph 23 of the Third-Party Complaint states that "as the Program grew, [McKinley, Collegiate] and Ms. White ultimately entered into the [Second Letter Agreement] . . ." (Third-Party Compl., ¶ 23.) Based upon these paragraphs, and the fact that the Second Letter Agreement does not contain an integration or merger clause, which shows that the parties intended for this writing to constitute their full and complete agreement, see Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1309 (11th Cir. 1998), the Court finds that McKinley has adequately alleged that oral terms and understandings were a part of its agreement with Collegiate and Ms. White.

Furthermore, under Florida law, "[w]here the language of a contract is ambiguous or unclear as to a particular right or duty, the court may receive evidence extrinsic to the contract for the purpose of determining the intent of the parties." Gulf Cities Gas Corp. v. Tangelo Park Service Co., 253 So. 2d 744, 748 (Fla. Dist. Ct. App. 4th Dist. 1971). The Court finds that the term in the Second Letter that states that Collegiate, its representatives, and Vonda White "agree to not violate . . . procedures outlined by [McKinley] and/or NCM" is ambiguous because the Second Letter Agreement does not define any procedures or make reference to any other documents that define any such procedures. As such, the fact that the Second Letter Agreement does not intricately detail all of the circumstances under which Collegiate was required to collect premiums from insureds, retain its commission, and then remit the balance to McKinley is not sufficient reason for this Court to find that there are no set of facts or circumstances under which McKinley could adequately state a claim, so as to defeat a motion to dismiss.

16

Accordingly, Third-Party Defendants' Motion to Dismiss Count VI is denied in all respects.

C.      Third-Party Defendants' Motion to Dismiss McKinley's Breach of Contract Claim Relating To Commission Rates - Count VII

McKinley states in its Third-Party Complaint that Third-Party Defendants also breached the First Letter Agreement, as modified by the Second Letter Agreement, because both of those two documents required Collegiate to retain only a 5 percent commission on its contract with *Loyola University - Chicago*. Instead, Collegiate violated the agreement by retaining a 10 percent commission.

Third-Party Defendants, however, argue in their Motion to Dismiss that the breach of contract claim in Count VII fails because: (1) the First Letter Agreement is simply a correspondence from Ms. White, as president of Collegiate, to McKinley to confirm a phone conversation between the parties and is not an enforceable contract; and (2) McKinley's allegations regarding *Oakland University* (Third-Party Compl., ¶ 118.) fails to allege how Collegiate and/or Ms. White's conduct constitutes a breach of contract.

The Court notes at the outset that where contract language is unclear, as the Court previously determined the Second Letter Agreement was, a court may consider other documents that are part of the same transaction. See Dune I, Inc. v. Palms North Owners Ass'n, 605 So. 2d 903 (Fla. Dist. Ct. App. 1st Dist. 1992). In this case, the First Letter Agreement states that it is a "confirmation" of a telephone conversation in which the commission rate for Loyola University - Chicago was to be 5 percent. Ms. White sent this letter to Jim McKinley, the president of McKinley, and asked him to sign it to confirm his understanding of this agreement. Furthermore, the Second Letter Agreement states that McKinley would pay Collegiate on a commission schedule. This letter also provides that renewal of current accounts that are written through McKinley/NCM will retain the same commission as the previous year. The Court finds that these documents, read together, are sufficient to state a claim for an enforceable contract and are not simply correspondence between the parties, particularly because both the first and Second Letter Agreements are signed by the parties to signify agreement to the terms contained therein.

It is correct that McKinley, in Count VII of the Third-Party Complaint, primarily focuses its claims as to Loyola University - Chicago. However, at paragraph 118, McKinley states that, "[i]n addition, [Collegiate] and Ms. White have likewise withheld commissions at the wrong rate with respect to the insurance sold to another institution, Oakland University." While McKinley does not specifically allege at what rate Collegiate should have retained commissions from the relationship with Oakland University, the Court finds that all that is required is that McKinley allege that there was a breach of the contract. McKinley has clearly done so by stating that Collegiate and Ms. White withheld their commissions at the wrong rate with respect to Oakland University. Accordingly, Third-Party Defendants Motion to Dismiss Count VII is denied.

> D.  Third-Party Defendants' Motion to Dismiss McKinley's Breach of Contract Claim Relating To Agency - Count VIII

McKinley further states in its Third-Party Complaint that Third-Party Defendants breached the Second Letter Agreement because Collegiate and Ms. White were required thereby to serve as agents representing McKinley in the solicitation of insurance products sold under the Program. Despite that obligation, McKinley alleges that Third-Party Defendants dealt directly with NCM to move various insurance cases out of the Program which benefitted McKinley, and instead collected substantial commissions from NCM without paying a portion to McKinley, all in violation of McKinley's rights.

Third-Party Defendants nevertheless argue in support of their Motion to Dismiss that Count VIII should be dismissed because: (1) the Second Letter Agreement contains no language regarding the establishment of a principal/agent relationship; and (2) McKinley seeks to impose obligations on Third-Party Defendants not contemplated by the Second Letter Agreement, to the extent that McKinley seeks to prevent Collegiate from dealing directly with NCM. The Court notes that the Second Letter Agreement states that Collegiate "would be assigned the following states in which to *represent* [McKinley] and [NCM] in the solicitation of college, student accident and sickness insurance, and college athletic accident insurance." (Third-Party Compl., Ex. C.)(Emphasis added). This

18

language would appear to imply an agency relationship.[6]  As such, the Court finds that McKinley has alleged a breach of contract based on breach of fiduciary duties by Collegiate and Ms. White.[7] Furthermore, based upon the additional language in the Second Letter that Collegiate and Ms. White agree not to violate any "procedures outlined by [McKinley] and/or NCM", the Court finds that it remains an open question whether those procedures included an obligation by Collegiate not to deal directly with NCM.  Accordingly, Third-Party Defendants' Motion to Dismiss Count VIII is denied.

E.      Tortious Interference with Advantageous Contractual Relationship - Count IX

In support of this claim, McKinley's Third-Party Complaint states that Third-Party Defendants knew of McKinley's contract with NCM and tortiously interfered with its relationship with NCM.  Third-Party Defendants argue that this claim should be dismissed because McKinley failed to allege that Third-Party Defendants intentionally solicited NCM to breach its contract with McKinley.  Additionally, Third-Party Defendants argue that the economic loss rule would bar McKinley's claim for tortious interference because the conduct constituting Collegiate's alleged tortious interference with McKinley's contract is identical to the conduct described in McKinley's breach of contract claims.

As previously discussed, the Court will apply Florida law to this claim as well because the last event that would subject Third-Party Defendants to liability (McKinley's damages) took place in Florida.  Furthermore, in order to bring a tortious interference claim in Florida, a plaintiff must allege: (1) the existence of a business relationship under which the plaintiff has legal rights; (2) the defendant's knowledge of that contract; (3) an intentional and unjustified interference with the

_____

[6]In fact, the Court notes that were it not to be considered an agency relationship, the language would appear to qualify as an agreement between competitors to divide a market, which is a violation of our antitrust laws.  See White Motor Co. v. United States, 372 U.S. 253, 259, 83 S. Ct. 696, 700 (1963)("If competitors agree to divide markets, they run afoul of the antitrust laws.")

[7]To the extent that Third-Party Defendants have also argued that Ms. White is not a party to the Second Letter Agreement and so should not be liable for it, the Court finds that the Second Letter Agreement clearly shows an intent by the parties to bind Ms. White, in that she is specifically named twice on the one-page document and also signed the document for Collegiate.

19

relationship by the defendant; and (5) damages. <u>Salit v. Ruden</u>, 742 So. 2d 381, 385 (Fla. Dist. Ct. App. 4th Dist. 1999). Here, Third-Party Defendants only complain about the third prong of this claim, that is, whether McKinley has sufficiently alleged facts to show an intentional and unjustified interference with the relationship between NCM and McKinley. In addressing this question, the Court looked to paragraph 131 of the Third-Party Complaint, which states as follows: "[Collegiate] and Ms. White intentionally and without justification interfered with [McKinley's] contract with NCM." (Third-Party Compl., ¶ 131.) Furthermore, the Court notes that McKinley has alleged that Third-Party Defendants solicited NCM for its business, helped NCM move insurance cases out of the Program, and later became NCM's Managing Agent in place of McKinley. The Court finds that this language, and these factual allegations, at the motion to dismiss stage, adequately alleges that Third-Party Defendants intentionally procured the breach of McKinley's contract with NCM.

Turning to Third-Party Defendants' second argument in support of their Motion to Dismiss this claim, the Court notes that the economic loss rule in Florida prohibits recovery for economic loss in tort, when such claims can be recovered in contract law. <u>See</u> <u>Florida Power & Light Co. v. Westinghouse Electric Corp.</u>, 510 So. 2d 899, 902 (Fla. 1987). The idea behind the economic loss rule is that contract law and tort law should remain separate and distinct, as there is a danger that tort remedies could "simply engulf the contractual remedies and thereby undermine the reliability of commercial transactions." <u>Hotels of Key Largo v. RHI Hotels, Inc.</u>, 694 So. 2d 74, 77 (Fla. Dist. Ct. App. 3d Dist. 1997)(citing <u>Huron Tool & Eng'g Co. v. Precision Consulting Servs.</u>, 532 N.W.2d 541, 544 (Mich. App. 1995). In Florida, the economic loss rule "does not bar tort actions *independent* of the contractual breach, where there exists a breach of contract action." <u>Bankers Mut. Capital Corp. v. United States Fid. & Guar. Co.</u>, 784 So. 2d 485, 488 (Fla. Dist. Ct. App. 4th Dist. 2001)(emphasis added). However, a tort action will be barred where there exists a breach of contract action if the alleged tort "pertains to the performance of the contract". <u>Id.</u> at 489 (contrasting cases where alleged tort pertains to inducing the agreement (not barred by economic loss rule) versus performance of the contract (barred by economic loss rule)); <u>see also</u> <u>Hotels of Key</u>

20

<u>Largo</u>, 694 So. 2d at 77 (Noting that "[a] critical distinction must be made where the alleged fraudulent misrepresentations are inseparably embodied in the parties' subsequent agreement.").

Based upon these principles, the Court finds that the economic loss rule does not apply to this claim for tortious interference with contract. While not completely clear under Florida law, some courts have held that tortious interference with contract is an independent tort that is not barred by the economic loss rule. <u>See</u> <u>Bankers Risk Mgmt. Servs. v. Av-Med Managed Care</u>, 697 So. 2d 158, 161 (Fla. Dist. Ct. App. 2d Dist. 1997)(finding that "[t]ortious interference is such an independent tort" that will not be barred by the economic loss rule); <u>but see</u> <u>Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.</u>, 208 F. Supp. 2d 1310, 1320 (S.D. Fla. 2002)(finding economic loss rule bars tortious interference claim when "claims are identical" to breach of contract claim). However, even in <u>Excess Risk Underwriters</u>, the general principle remains the same: whether the "factual allegations and damages sought" are identical as between the tort and contract claims, <u>id.</u>, and whether the intentional or negligent acts are considered to be independent from acts that breached the contract, <u>see</u> <u>Moransais v. Heathman</u>, 744 So. 2d 973, 981 (Fla. 1999)("Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from acts that breached the contract."). The Court finds that the claims alleged by McKinley as to tortious interference are not the same as those alleged as to breach of contract. McKinley's breach of contract claims, as previously discussed, concern Third-Party Defendants' failure to remit premiums to McKinley (Count VI), withholding commissions at the wrong rate (Count VII), and failure to act as agents (Count VIII). In contrast, McKinley's tortious interference claim adds the additional factual element of intentionally interfering with an entirely separate contract, the contract between McKinley and NCM. Additionally, the legal elements between McKinley's breach of contract claims and McKinley's tortious interference claim differ, as the tortious interference claim requires an element of intent not necessary to its breach of contract claim. Accordingly, Third-Party Defendants' Motion to Dismiss Count IX is denied it its entirety.

21

F.      Negligent Misrepresentation - Count X

McKinley states in its Third-Party Complaint that pursuant to the Managing General Agent Agreement with NCM, McKinley was to price or underwrite the cost of the premiums for the insurance products offered under the Program.  In order to do this, McKinley needed information that would come from the broker or agent working with the school or institution directly.  McKinley relied upon its agents, including Collegiate and Ms. White, to provide information for the underwriting process.  McKinley alleges that Collegiate and Ms. White negligently failed to provide McKinley with full, complete, or accurate information, which thereby led to McKinley to sustain damages to the extent that it impaired its business relationship with NCM.  However, Third-Party Defendants argue that McKinley fails to state a valid claim for negligent misrepresentation.  Alternatively, Third-Party Defendants again argue that the economic loss rule applies to bar McKinley's claim because the damages sought are identical to the conduct and damages sought in McKinley's breach of contract claims.

The Court finds that Third-Party Defendants' Motion to Dismiss initially fails here because it does not specifically identify what is lacking in McKinley's Third-Party Complaint with respect to this claim.[8]  However, unlike the tortious interference claim, the Court notes that the economic loss rule would apply to McKinley's negligent misrepresentation claim.  The alleged conduct by Third-Party Defendants, failing to provide accurate underwriting information, directly concerns the obligations in the contract between McKinley and Third-Party Defendants as that is what McKinley hired Third-Party Defendants to do.  Where an "alleged fraudulent misrepresentation is inseparable

_____

[8]Under Florida law, to state a cause of action for negligent misrepresentation, one must allege (1) a misrepresentation of a material fact; (2) that the speaker either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the misrepresentation was false; (3) the speaker intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation.  Florida Women's Medical Clinic v. Sultan, 656 So. 2d 931, 933 (Fla. Dist. Ct. App. 4th Dist. 1995)(citation omitted).  The Court finds that the Third-Party Complaint adequately alleges each of these elements.

22

from the essence of the parties' agreement, the economic loss rule applies and the parties are limited to pursuing their rights in contract." Hotels of Key Largo, 694 So. 2d at 78. Accordingly, because the negligent misrepresentation claim here relates to Third-Party Defendants performance of the contract, Third-Party Defendants' Motion to Dismiss Count X is granted.

G.     Common Law Indemnification - Count XI

McKinley has alleged a claim of common law indemnification which Third-Party Defendants seek to dismiss as well. In support of this claim, McKinley states that to the extent that McKinley has any liability to NCM, such liability would be wholly vicarious and derivative with respect to Third-Party Defendants, given that McKinley reasonably relied upon the information provided by its agents, Collegiate and Ms. White. In response, Third-Party Defendants argue that indemnity as implied-in-law can only arise where a passive tortfeasor pays the judgment owed by an active tortfeasor to the injured party. Third-Party Defendants further state that according to McKinley's own allegations, it was "far from passive in its dealings with NCM." (Third-Party Defs.' Mot. Dismiss, at 8.) The Court notes that according to NCM's Complaint against McKinley, the majority of the claims against McKinley by NCM involve the University of South Florida, in Tampa, Florida. (Compl., ¶¶ 10-43.) McKinley in its Third-Party Complaint does not even mention the University of South Florida as a university handled by Third-Party Defendants. In fact, the Second Letter Agreement does not list Florida as one the states assigned to Collegiate. As such, the Court finds that, as a matter of law from the face of the Third-Party Complaint, McKinley has not alleged a valid common law indemnification claim against Third-Party Defendants. Accordingly, Third-Party Defendants' Motion to Dismiss Count XI is granted.

H.     Breach of Fiduciary Duty - Count XII

Finally, McKinley asserts a claim for Breach of Fiduciary Duty in its Third-Party Complaint to the extent that Third-Party Defendants, as agents under the Second Letter Agreement, owed McKinley duties of good faith, loyalty, and to act in the best interests of the principal, McKinley. McKinley alleges that Third-Party Defendants breached their fiduciary duties by failing to provide

23

full and complete information to McKinley, by directly negotiating with NCM to move various insurance cases, by failing to remit all premium dollars received to McKinley, and otherwise failing to act in good faith. In response, Third-Party Defendants argue that in order to establish a fiduciary relationship, there must be an allegation of dependency by one party and a voluntary assumption of duty by the other party to advise, counsel, and protect the weaker party. Third-Party Defendants also again argue that the economic loss rule would apply to this claim, so as to bar this tort action as well.

Similarly to Count XI, the Court finds that the economic loss rule bars McKinley's breach of fiduciary duty claim to the extent that this claim is related to contract performance by Third-Party Defendants. Under Florida law, a breach of fiduciary duty claim is barred by the economic loss rule to the extent that the duty arises from the underlying contract. See Excess Risk Underwriters, 208 F. Supp. 2d at 1318 (barring a breach of fiduciary duty claim because, "the Florida supreme court's most recent pronouncement of the economic loss rule . . . bars tort claims that are based on actions inextricably intertwined with the acts constituting the breach of contract."); Moransais, 744 So. 2d at 981. Here, there would be no duty between McKinley and Collegiate or Ms. White but for the Second Letter Agreement and its additional oral terms. Furthermore, the obligations McKinley cites as a basis for breach of fiduciary duty all relate to Third-Party Defendants' responsibilities under that agreement. Accordingly, Third-Party Defendants' Motion to Dismiss Count XII is granted.

V.     CONCLUSION

For the reasons stated herein, the Court holds that Third-Party Defendant Vonda White's Motion to Dismiss based upon personal jurisdiction [Document #32] is DENIED as to claims that specifically address an injunction, breach of contract based upon fiduciary duty, and tortious interference with contract (Claims V, VIII, and IX). On the other hand, Ms. White's Motion to Dismiss is GRANTED as to the other two breach of contract claims (Claims VI and VII).

Furthermore, Third-Party Defendants Vonda White and Collegiate's joint Motion to Dismiss under 12(b)(6) [Document #30] is GRANTED IN PART and DENIED IN PART. It is

24

GRANTED with respect to negligent misrepresentation, common law indemnity, and breach of fiduciary duty (Claims X, XI, and XII). It is DENIED, however, with respect to an injunction, breach of contract, and tortious interference with contract (Claims V, VI, VII, VIII, and IX). Thus, the claims remaining against Ms. White are: a request for an injunction, the breach of contract claim based upon agency, and tortious interference with contract (Counts V, VIII, and IX). The claims remaining against Collegiate are: a request for an injunction, all three breach of contract claims, and tortious interference with contract (Counts V, VI, VII, VIII, and IX). An Order consistent with this Memorandum Opinion shall be filed contemporaneously herewith.

This, the 2nd day of September, 2005.

United States District Judge